# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
### SHREVEPORT DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA and LOUISIANA DEPARTMENT OF ENVIRONMENTAL QUALITY,** | ) ) ) ) |
| **Plaintiffs,** | ) ) |
| **v.** | ) ) |
| **SUNOCO PIPELINE L.P. and MID-VALLEY PIPELINE COMPANY,** | ) ) ) |
| **Defendants.** | ) ) ) |

Civil Action No.___5:19-cv-107____

Judge_____

## COMPLAINT

The United States of America ("United States"), by the authority of the Attorney General of the United States and acting at the request of the United States Environmental Protection Agency ("EPA"), and the Louisiana Department of Environmental Quality ("LDEQ"), file this Complaint and allege the following:

## NATURE OF THE ACTION

1.      This is a civil environmental enforcement action against Sunoco Pipeline L.P. ("Sunoco") and Mid-Valley Pipeline Company ("Mid-Valley") in connection with three unlawful discharges of oil from different oil pipelines owned by Sunoco or Mid-Valley and operated by Sunoco. The first spill occurred in Tyler County, Texas, on February 23, 2013, when the Sunoco-owned and -operated Gulf Coast Pipeline ruptured, spilling approximately 550 barrels of crude oil into a creek that flows to the Neches River (the "Texas Spill"). The second spill occurred in Caddo Parish, Louisiana, on October 13, 2014, when the Sunoco-operated and Mid-Valley-owned Mid-Valley Pipeline ruptured due to stress corrosion cracking,

spilling approximately 4,500 barrels of crude oil into waters that flow to Caddo Lake (the "Louisiana Spill"). The third spill occurred in Grant County, Oklahoma, on January 20, 2015, when a Sunoco-owned and -operated 4-inch gathering line (the "Oklahoma Line") ruptured due to external corrosion, spilling approximately 40 barrels of crude oil into waters that flow to the Arkansas River (the "Oklahoma Spill").

2.      The United States seeks civil penalties and injunctive relief pursuant to Clean Water Act ("CWA") Sections 309(b) and 311(b), 33 U.S.C. §§ 1319(b) and 1321(b), for violations arising from the oil spills.

3.      LDEQ seeks civil penalties, recovery of State response costs, and injunctive relief pursuant to the Louisiana Environmental Quality Act, La. R.S 30:2001 *et seq.*, and regulations promulgated pursuant to that statute, for violations arising from the Louisiana Spill.

## JURISDICTION AND VENUE

4.      This Court has jurisdiction over this matter pursuant to Sections 309(b) and 311(b)(7)(E) and (n) of the CWA, 33 U.S.C. §§ 1319(b), 1321(b)(7)(E) and (n); and 28 U.S.C. §§ 1331, 1345, and 1355.

5.      This Court has supplemental jurisdiction over the claims of LDEQ, pursuant to 28 U.S.C. § 1367(a).

6.      Authority to bring this action on behalf of the United States is vested in the United States Department of Justice by, *inter alia*, 28 U.S.C. §§ 516 and 519. Venue is proper in the Western District of Louisiana pursuant to Section 309(b) and 311(b)(7)(E) of the CWA, 33 U.S.C. §§ 1319(b) and 1321(b)(7)(E), and 28 U.S.C. §§ 1391 and 1395, because the Louisiana Spill occurred in the Western District of Louisiana and Defendants are located, and doing and transacting business, in the Western District of Louisiana.

## THE PARTIES

7.      Plaintiff United States of America is acting at the request of EPA.

8.      EPA served as the lead federal agency in the oversight of the oil spill response and cleanup efforts with respect to the Texas and Louisiana oil spills.

9.      Plaintiff LDEQ has jurisdiction over matters affecting the regulation of the environment within Louisiana, including but not limited to, serving as the lead state agency in the oversight of the Louisiana Spill cleanup and remediation efforts.

10.     Sunoco is a limited partnership organized under the laws of Delaware. At all relevant times, Sunoco has operated the Mid-Valley Pipeline and owned and operated both the Gulf Coast Pipeline and the Oklahoma Line.

11.     Mid-Valley is a corporation organized and existing under the laws of Ohio.

12.     At all relevant times, Mid-Valley has owned the Mid-Valley Pipeline.

## STATUTORY BACKGROUND

13.     Section 311(b)(3) of the CWA, 33 U.S.C. § 1321(b)(3), prohibits the "discharge of oil or any hazardous substances (i) into or upon the navigable waters of the United States [or] adjoining shorelines, . . . in such quantities as may be harmful . . . ."

14.     Pursuant to Section 311(b)(7)(A) of the CWA, 33 U.S.C. § 1321(b)(7)(A), "[a]ny person who is the owner, operator, or person in charge of any . . . onshore facility . . . from which oil . . . is discharged in violation of [Section 311(b)(3)], shall be subject to a civil penalty in an amount up to [$37,500] per day of violation or an amount up to [$1,100 (on or before December 6, 2013) or $2,100 (after December 6, 2013)] per barrel of oil . . . discharged." *See also* 40 C.F.R. § 19.4 (2015) (listing these updated penalty rates).

15.     Civil penalties can be increased up to $4,300 (for spills on or before December 6, 2013) or $5,300 (for spills after December 6, 2013) per barrel discharged pursuant to

3

Section 311(b)(7)(D) of the CWA, 33 U.S.C. § 1321(b)(7)(D), which applies if the violation results from "gross negligence or willful misconduct." *See also* 40 C.F.R. § 19.4 (2015).

16.     Enforcement of Section 311 of the CWA supports the national objective to prevent and deter oil spills and "to restore and maintain the chemical, physical, and biological integrity of the Nation's waters." 33 U.S.C. §§ 1251(a), 1321(b)(1).

17.     Section 301(a) of the CWA, 33 U.S.C. § 1311(a), prohibits "the discharge of any pollutant by any person" except in compliance with enumerated sections.

18.     Section 309(b) of the CWA, 33 U.S.C. § 1319(b), is the enforcement provision for Section 301(a) and authorizes civil actions for "relief, including a permanent or temporary injunction."

19.     La. R.S. 30:2076(A)(1) prohibits the discharge into any waters of the State of: "(a) Any waste or any other substance of any kind that will tend to cause water pollution in violation of any rule, order, or regulation; or (b) Any substance, the discharge of which violates any term, condition, or limit imposed by a permit."

20.     La. R.S. 30:2076(A)(3) prohibits the violation by any person of "any rule or regulation adopted under this Chapter or the terms of any permit or order issued under authority of this Subtitle."

21.     LAC 33:I.3925.A.3 states that written notification reports required to be submitted under LAC 33:I.3915, 3917, and 3919, relating to updates of the status of ongoing investigation of an unauthorized discharge "shall be submitted every 60 days until the investigation has been completed and the results of the investigation have been submitted."

22.     LAC 33:IX.501.A states: "Failure to comply with any of the provisions of these regulations or of the terms and conditions of any permit granted or order issued hereunder

4

constitutes a violation of the act."

23.     LAC 33:IX.1701.B states: "No oily fluids shall be discharged to, or allowed to flow on the ground, or be carried from the original lease in open ditches, or discharged or allowed to flow into any stream, lake or other body of water."

24.     La. R.S. 30:2025(E)(1)(a) authorizes civil penalties "of not more than the cost to the state of any response action made necessary by such violation which is not voluntarily paid by the violator, and a penalty of not more than [$32,500] for each day of violation. However, when any such violation is done intentionally, willfully, or knowingly, or results in a discharge or disposal which causes irreparable or severe damage to the environment or if the substance discharged is one which endangers human life or health, such person may be liable for an additional penalty of not more than one million dollars."

## FACTS

### *The Texas Spill*

25.     The Gulf Coast Pipeline includes sections of 4-inch, 6-inch, and 8-inch diameter pipe, and carries crude oil from Colmesneil, Texas, to Chester, Texas.

26.     On February 23, 2013, a local resident discovered the Texas Spill from the Gulf Coast Pipeline in the vicinity of Chester, in Tyler County, Texas.

27.     The Texas Spill was caused by a rupture of the Gulf Coast Pipeline due to internal corrosion.

28.     The oil from the Texas Spill entered an unnamed ditch that flows to Otter Creek, which flows to Russell Creek, which flows to the Neches River.

29.     Oil from the Texas Spill reached at least as far as Russell Creek.

30.     Russell Creek is a perennial water body, and has a bed, banks, and an ordinary high water mark.

31.     Russell Creek flows to the Neches River.

32.     The spill response lasted for approximately two and a half months, with EPA as head of the Unified Command.

33.     EPA demobilized from the spill site on May 1, 2013.

34.     Approximately 550 barrels of crude oil spilled from the Gulf Coast Pipeline during the Texas Spill.

*The Louisiana Spill*

35.     The Mid-Valley Pipeline is made up of segments of 8-inch, 12-inch, 20-inch and 22-inch diameter steel pipe, and carries crude oil over 1,000 miles from Longview, Texas, to Samaria, Ohio, crossing Louisiana, Arkansas, Mississippi, Tennessee, Kentucky, and Ohio.

36.     At approximately 8:00 a.m. CDT on October 13, 2014, a sudden pressure drop was detected in the Sunoco control room, indicating failure of the pipeline.

37.     Employees of Sunoco or Mid-Valley were dispatched to the area of suspected rupture, where they discovered a breach in the Mid-Valley Pipeline near Mile Post 51.5 and approximately one mile west of State Highway 169, which is approximately three miles southwest of Mooringsport, in Caddo Parish, Louisiana.

38.     The Louisiana Spill was caused by stress corrosion cracking.

39.     Crude oil from the Louisiana Spill was released to a creek that flows to Tete Bayou, which flows to Caddo Lake. The oil flowed at least four miles from its source, reaching Tete Bayou near where Tete Bayou flows into Caddo Lake.

40.     Tete Bayou is a perennial water body, and has a bed, banks, and an ordinary high water mark.

41.     The Louisiana Spill and the associated rupture occurred in an area classified as a High Consequence Area ("HCA") by the United States Department of Transportation's Pipeline

6

and Hazardous Materials Safety Administration, which means it is an area where a release could have significant adverse consequences. Operators are required to devote additional focus, efforts, and analysis to ensure the integrity of pipelines in HCAs.

42.     The spill response lasted until January 16, 2015, when EPA conducted a final inspection of the spill site.

43.     Approximately 4,500 barrels of crude oil spilled from the Mid-Valley Pipeline during the Louisiana Spill.

*The Oklahoma Spill*

44.     The Oklahoma Line is a network of gathering lines made up of segments of 4-inch, 6-inch, 8-inch, 10-inch, and 12-inch diameter pipe.

45.     On January 20, 2015, a 4-inch diameter segment of the Oklahoma Line located in Grant County, Oklahoma, ruptured due to external corrosion, discharging crude oil.

46.     Oil from the Oklahoma Spill reached Sand Creek.

47.     Sand Creek flows to Crooked Creek, which flows to the Arkansas River.

48.     Sand Creek and Crooked Creek are perennial water bodies, and each has a bed, banks, and an ordinary high water mark.

49.     Approximately 40 barrels of crude oil spilled from the Oklahoma Line during the Oklahoma Spill.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION

**By the United States: Civil Penalties for Violation of CWA Section 311(b)**
**33 U.S.C. § 1321(b)**

50.     The preceding paragraphs are incorporated herein.

51.     Sunoco is and at all relevant times was the "owner" and "operator" of the Gulf

Coast Pipeline, within the meaning of Section 311(a)(6) of the CWA, 33 U.S.C. § 1321(a)(6).

52.    Sunoco is the "owner, operator, or person in charge" of the Gulf Coast Pipeline,

within the meaning of Section 311(b)(7)(A) of the CWA, 33 U.S.C. § 1321(b)(7)(A).

53.    Sunoco is a "person," within the meaning of Section 311(a)(7) of the CWA,

33 U.S.C. § 1321(a)(7).

54.    The Gulf Coast Pipeline is an "onshore facility" within the meaning of Section

311(a)(10) of the CWA, 33 U.S.C. § 1321(a)(10).

55.    Oil was "discharge[d]" from the Gulf Coast Pipeline, within the meaning of

Section 311(a)(2) of the CWA, 33 U.S.C. § 1321(a)(2).

56.    The discharge from the Gulf Coast Pipeline was of "oil" within the meaning of

Section 311(a)(1) of the CWA, 33 U.S.C. § 1321(a)(1).

57.    Russell Creek and the Neches River are "navigable water[s] of the United States,"

within the meaning of Section 311(b)(3) of the CWA, 33 U.S.C. § 1321(b)(3).

58.    Sunoco's oil discharge caused a sheen upon and discoloration of the water surface

and adjoining shorelines of Russell Creek, and caused sludge or emulsion to be deposited

beneath the surface of that water and upon its adjoining shorelines. Thus, the quantity discharged

was of a quantity "as may be harmful" within the meaning of Section 311(b)(3) and (4) of the

CWA. 33 U.S.C. § 1321(b)(3) & (4); 40 C.F.R. § 110.3.

59.    Sunoco's discharge of oil violated Section 311(b)(3) of the CWA, 33 U.S.C.

§ 1321(b)(3).

60.    Sunoco is liable for civil penalties of up to $1,100 per barrel of oil discharged

during the Texas Spill. *See* Section 311(b)(7)(A) of the CWA, 33 U.S.C. § 1321(b)(7)(A); 40

C.F.R. § 19.4 (2015). In addition, if it is proven that the violation was the result of gross

8

negligence or willful misconduct, Sunoco is liable under Section 311(b)(7)(D), 33 U.S.C.

§ 1321(b)(7)(D), for civil penalties of up to $4,300 per barrel of oil discharged during the Texas

Spill. *Id.*; 40 C.F.R. § 19.4 (2015) (listing updated penalty rates for violations that occur both

before and after December 6, 2013, as required by the Federal Civil Penalties Inflation

Adjustment Act of 1990 (28 U.S.C. § 2461 note; Pub. L. 101-410), as amended by the Debt

Collection Improvement Act of 1996).

### SECOND CAUSE OF ACTION

**By the United States: Civil Penalties for Violation of CWA Section 311(b)**
**33 U.S.C. § 1321(b)**

61.     Paragraphs 1 through 49 are incorporated herein.

62.     Sunoco is and at all relevant times was the "operator" of the Mid-Valley Pipeline,

within the meaning of Section 311(a)(6) of the CWA, 33 U.S.C. § 1321(a)(6).

63.     Sunoco is the "owner, operator, or person in charge" of the Mid-Valley Pipeline,

within the meaning of Section 311(b)(7)(A) of the CWA, 33 U.S.C. § 1321(b)(7)(A).

64.     Mid-Valley is and at all relevant times was the "owner" of the Mid-Valley

Pipeline, within the meaning of Section 311(a)(6) of the CWA, 33 U.S.C. § 1321(a)(6).

65.     Mid-Valley is the "owner, operator, or person in charge" of the Mid-Valley

Pipeline, within the meaning of Section 311(b)(7)(A) of the CWA, 33 U.S.C. § 1321(b)(7)(A).

66.     Mid-Valley is a "person," within the meaning of Section 311(a)(7) of the CWA,

33 U.S.C. § 1321(a)(7).

67.     The Mid-Valley Pipeline is an "onshore facility" within the meaning of Section

311(a)(10) of the CWA, 33 U.S.C. § 1321(a)(10).

68.     Oil was "discharge[d]" from the Mid-Valley Pipeline, within the meaning of

Section 311(a)(2) of the CWA, 33 U.S.C. § 1321(a)(2).

69.     The discharge from the Mid-Valley Pipeline was of crude oil, which is "oil" within the meaning of Section 311(a)(1) of the CWA, 33 U.S.C. § 1321(a)(1).

70.     Tete Bayou and Caddo Lake are "navigable water[s] of the United States," within the meaning of Section 311(b)(3) of the CWA, 33 U.S.C. § 1321(b)(3).

71.     Defendants' oil discharge caused a sheen upon and discoloration of water surfaces and adjoining shorelines of Tete Bayou and Caddo Lake, and caused sludge or emulsion to be deposited beneath the surface of those waters and upon their adjoining shorelines. Thus, the quantity discharged was of a quantity "as may be harmful" within the meaning of Section 311(b)(3) and (4) of the CWA. 33 U.S.C. § 1321(b)(3) & (4); 40 C.F.R. § 110.3.

72.     Defendants' discharge of oil violated Section 311(b)(3) of the CWA, 33 U.S.C. § 1321(b)(3).

73.     Sunoco is liable for civil penalties of up to $2,100 per barrel of oil discharged during the Louisiana Spill. *See* Section 311(b)(7)(A) of the CWA, 33 U.S.C. § 1321(b)(7)(A); 40 C.F.R. § 19.4 (2015). In addition, if it is proven that the violation was the result of gross negligence or willful misconduct, Sunoco is liable under Section 311(b)(7)(D), 33 U.S.C. § 1321(b)(7)(D), for civil penalties of up to $5,300 per barrel of oil discharged during the Louisiana Spill. *Id.*; 40 C.F.R. § 19.4 (2015) (listing updated penalty rates for violations that occur both before and after December 6, 2013, as required by the Federal Civil Penalties Inflation Adjustment Act of 1990 (28 U.S.C. § 2461 note; Pub. L. 101-410), as amended by the Debt Collection Improvement Act of 1996).

74.     Mid-Valley is liable for civil penalties of up to $2,100 per barrel of oil discharged during the Louisiana Spill. *See* Section 311(b)(7)(A) of the CWA, 33 U.S.C. § 1321(b)(7)(A); 40 C.F.R. § 19.4 (2015). In addition, if it is proven that the violation was the result of gross

negligence or willful misconduct, Mid-Valley is liable under Section 311(b)(7)(D), 33 U.S.C.

§ 1321(b)(7)(D), for civil penalties of up to $5,300 per barrel of oil discharged during the

Louisiana Spill. *Id.*; 40 C.F.R. § 19.4 (2015) (listing updated penalty rates for violations that

occur after December 6, 2013, as required by the Federal Civil Penalties Inflation Adjustment

Act of 1990 (28 U.S.C. § 2461 note; Pub. L. 101-410), as amended by the Debt Collection

Improvement Act of 1996).

### THIRD CAUSE OF ACTION

**By the United States: Civil Penalties for Violation of CWA Section 311(b)**
**33 U.S.C. § 1321(b)**

75.     Paragraphs 1 through 49 are incorporated herein.

76.     Sunoco is and at all relevant times was the "owner" and "operator" of the

Oklahoma Line, within the meaning of Section 311(a)(6) of the CWA, 33 U.S.C. § 1321(a)(6).

77.     Sunoco is the "owner, operator, or person in charge" of the Oklahoma Line,

within the meaning of Section 311(b)(7)(A) of the CWA, 33 U.S.C. § 1321(b)(7)(A).

78.     The Oklahoma Line is an "onshore facility," within the meaning of Section

311(a)(10) of the CWA, 33 U.S.C. § 1321(a)(10).

79.     Oil was "discharge[d]" from the Oklahoma Line, within the meaning of Section

311(a)(2) of the CWA, 33 U.S.C. § 1321(a)(2).

80.     The discharge from the Oklahoma Line was of crude oil, which is "oil," within

the meaning of Section 311(a)(1) of the CWA, 33 U.S.C. § 1321(a)(1).

81.     Sand Creek, Crooked Creek, and the Arkansas River are "navigable water[s] of

the United States," within the meaning of Section 311(b)(3) of the CWA, 33 U.S.C.

§ 1321(b)(3).

82.     Sunoco's oil discharge caused a sheen upon and discoloration of water surfaces

11

and adjoining shorelines of Sand Creek and Crooked Creek, and caused sludge or emulsion to be

deposited beneath the surface of those waters and upon their adjoining shorelines. Thus, the

quantity discharged was of a quantity "as may be harmful" within the meaning of Section

311(b)(3) and (4) of the CWA. 33 U.S.C. § 1321(b)(3) & (4); 40 C.F.R. § 110.3.

83.     Sunoco's discharge of oil violated Section 311(b)(3) of the CWA, 33 U.S.C.

§ 1321(b)(3).

84.     Sunoco is liable for civil penalties of up to $2,100 per barrel of oil discharged

during the Oklahoma Spill. *See* Section 311(b)(7)(A) of the CWA, 33 U.S.C. § 1321(b)(7)(A);

40 C.F.R. § 19.4 (2015). In addition, if it is proven that the violation was the result of gross

negligence or willful misconduct, Sunoco is liable under Section 311(b)(7)(D), 33 U.S.C.

§ 1321(b)(7)(D), for civil penalties of up to $5,300 per barrel of oil discharged during the

Oklahoma Spill. *Id.*; 40 C.F.R. § 19.4 (2015) (listing updated penalty rates for violations that

occur both before and after December 6, 2013, as required by the Federal Civil Penalties

Inflation Adjustment Act of 1990 (28 U.S.C. § 2461 note; Pub. L. 101-410), as amended by the

Debt Collection Improvement Act of 1996).

### FOURTH CAUSE OF ACTION

**By the United States: Injunctive Relief under CWA Section 309(b)**
**33 U.S.C. § 1319(b)**

85.     Paragraphs 1 through 49 are incorporated herein.

86.     Sunoco is a "person," within the meaning of Section 301(a) of the CWA,

33 U.S.C. § 1311(a).

87.     The oil that spilled during the Texas Spill is a "pollutant," within the meaning of

Section 301(a) of the CWA, 33 U.S.C. § 1311(a).

88.     The discharge of oil from the Texas Spill reached waters of the United States and

constituted the "discharge of a pollutant," within the meaning of Sections 301(a) and 502(12) of the CWA, 33 U.S.C. §§ 1311(a), 1362(12).

89.     Sunoco was not authorized by any permit to discharge the oil from the Texas Spill to waters of the United States.

90.     The discharge of oil during the Texas Spill violated Section 301(a) of the CWA, 33 U.S.C. § 1311(a).

91.     Because Sunoco unlawfully discharged a pollutant to waters of the United States in violation of Section 301(a) of the CWA, 33 U.S.C. § 1311(a), Sunoco is liable for injunctive relief pursuant to Section 309(b) of the CWA, 33 U.S.C. § 1319(b).

### FIFTH CAUSE OF ACTION

### By the United States: Injunctive Relief under CWA Section 309(b)
### 33 U.S.C. § 1319(b)

92.     Paragraphs 1 through 49 and 86 are incorporated herein.

93.     Mid-Valley is a "person," within the meaning of Section 301(a) of the CWA, 33 U.S.C. § 1311(a).

94.     The oil that spilled during the Louisiana Spill is a "pollutant," within the meaning of Section 301(a) of the CWA, 33 U.S.C. § 1311(a).

95.     The discharge of oil from the Louisiana Spill reached waters of the United States and constituted the "discharge of a pollutant," within the meaning of Sections 301(a) and 502(12) of the CWA, 33 U.S.C. §§ 1311(a), 1362(12).

96.     Defendants were not authorized by any permit to discharge the oil from the Louisiana Spill to waters of the United States.

97.     The discharge of oil during the Louisiana Spill violated Section 301(a) of the CWA, 33 U.S.C. § 1311(a).

98.     Because Defendants unlawfully discharged a pollutant to waters of the United States in violation of Section 301(a) of the CWA, 33 U.S.C. § 1311(a), Defendants are liable for injunctive relief pursuant to Section 309(b) of the CWA, 33 U.S.C. § 1319(b).

**SIXTH CAUSE OF ACTION**

**By the United States: Injunctive Relief under CWA Section 309(b)**
**33 U.S.C. § 1319(b)**

99.     Paragraphs 1 through 49 and 86 are incorporated herein.

100.    The oil that spilled during the Oklahoma Spill is a "pollutant," within the meaning of Section 301(a) of the CWA, 33 U.S.C. § 1311(a).

101.    The discharge of oil from the Oklahoma Spill reached waters of the United States and constituted the "discharge of a pollutant," within the meaning of Sections 301(a) and 502(12) of the CWA, 33 U.S.C. §§ 1311(a), 1362(12).

102.    Sunoco was not authorized by any permit to discharge the oil from the Oklahoma Spill to waters of the United States.

103.    The discharge of oil during the Oklahoma Spill violated Section 301(a) of the CWA, 33 U.S.C. § 1311(a).

104.    Because Sunoco unlawfully discharged a pollutant to waters of the United States in violation of Section 301(a) of the CWA, 33 U.S.C. § 1311(a), Sunoco is liable for injunctive relief pursuant to Section 309(b) of the CWA, 33 U.S.C. § 1319(b).

**SEVENTH CAUSE OF ACTION**

**By LDEQ: Civil Penalties for Violations of Louisiana Environmental Quality Act**

105.    Paragraphs 1 through 49 are incorporated herein.

106.    The Louisiana Spill constitutes a violation of La. R.S. 30:2076(A)(1) and (A)(3),

14

LAC 33:IX.501.A, LAC 33:IX.1701.B; and Defendants' LPDES General Permit.

107.    Additionally, Defendants failed to provide, pursuant to LAC 33:I.3915, required 60-day updates to LDEQ on the status of investigations regarding the Louisiana Spill. Therefore, Defendants are liable for failing to update LDEQ, pursuant to LAC 33:I.3925.A.3, on the status, every 60 days, of the investigation of the Louisiana Spill.

108.    As a result of Defendants' violations in connection with the Louisiana Spill, Defendants are liable under La. R.S. 30:2025 for civil penalties of not more than the cost to the State of any response action made necessary by these violations which is not voluntarily paid by the violator, and penalties of not more than $32,500 for each day of violation, and if it is established that any violation was done intentionally, willfully, or knowingly, or resulted in a discharge or disposal which caused irreparable or severe damage to the environment or if the substance discharged is one which endangers human life or health, Defendants may be liable for additional penalties of not more than $1,000,000.

## EIGHTH CAUSE OF ACTION

### By LDEQ: Recovery of Response Action Costs

109.    Paragraphs 1 through 49 are incorporated herein.

110.    LDEQ has incurred response action costs associated with the Louisiana Spill. None of these costs has been paid by Defendants to date.

111.    Pursuant to La. R.S. 30:2025(E)(1)(a), Defendants are liable to LDEQ for LDEQ's response action costs incurred in responding to the Louisiana Spills.

## NINTH CAUSE OF ACTION

### By LDEQ: Injunctive Relief under the Louisiana Environmental Quality Act

112.    Paragraphs 1 through 49 are incorporated herein.

15

113.    LDEQ is entitled to injunctive relief without the requisite showing of irreparable injury when the conduct sought to be restrained is unconstitutional or unlawful, i.e., when the conduct sought to be enjoined constitutes a direct violation of a prohibitory law and/or a violation of a constitutional right. *Jurisich v. Jenkins*, 749 So. 2d 597 (La. 1999).

114.    The Louisiana Spill violated the Louisiana Environmental Quality Act and the regulations promulgated thereunder. Defendants are subject to appropriate injunctive relief pursuant to La. R.S. 30:2025(E)(1)(a).

## REQUEST FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court:

A.    Enter judgment that Sunoco is liable to the United States for civil penalties pursuant to 311(b) of the Clean Water Act, and assess civil penalties of up to $1,100 per barrel of oil discharged during the Texas Spill and up to $2,100 per barrel of oil discharged during the Louisiana and Oklahoma Spills, respectively, or up to $4,300 per barrel of oil discharged during the Texas Spill and $5,300 per barrel of oil discharged during the Louisiana and Oklahoma Spills, respectively, if it is proven that the violations were the result of gross negligence or willful misconduct, pursuant to Section 311(b)(7)(A) or (D);

B.    Enter judgment that Mid-Valley is liable to the United States for civil penalties pursuant to 311(b) of the Clean Water Act, and assess civil penalties of up to $2,100 per barrel of oil discharged during the Louisiana Spill, or up to $5,300 per barrel of oil discharged during the Louisiana Spill, if it is proven that the violation was the result of gross negligence or willful misconduct, pursuant to Section 311(b)(7)(A) or (D);

C.    Enter judgment that each Defendant is liable to LDEQ for its unpaid response costs, appropriate injunctive relief, and civil penalties of not more than $32,500 for each day of

16

violation for the Louisiana Spill, and if it is established that the violations were done intentionally, willfully, or knowingly, or resulted in a discharge or disposal which caused irreparable or severe damage to the environment or if the substance discharged is one which endangers human life or health, additional penalties of not more than $1,000,000, pursuant to La. R.S. 30:2025(e)(1)(a);

D.      Enter judgment that each Defendant is liable to the United States and LDEQ for all appropriate injunctive relief pursuant to Sections 301 and 309 of the Clean Water Act and Louisiana law, and award injunctive relief against each Defendant as appropriate;

E.      Award the United States and LDEQ their costs of this action; and

F.      Award the United States and LDEQ such other and further relief as the Court deems just and proper.

Respectfully submitted,

FOR THE UNITED STATES OF AMERICA:

JEFFREY BOSSERT CLARK
Assistant Attorney General
Environment and Natural Resources Division
United States Department of Justice

R. SHEA DIAZ (D.C. Bar #1500278)
Trial Attorney
Environmental Enforcement Section
Environment and Natural Resources Division
United States Department of Justice
P.O. Box 7611
Washington, D.C. 20044-7611
Phone: (202) 514-3211
Fax: (202) 616-6584
E-mail: rebecca.diaz@usdoj.gov

17

DAVID C. JOSEPH
United States Attorney
Western District of Louisiana


/s/ *Katherine W. Vincent*
KATHERINE W. VINCENT (#18717)
Assistant United States Attorney
U.S. Attorney's Office
Western District of Louisiana
800 Lafayette Street, Suite 2200
Lafayette, LA 70501


OF COUNSEL:

EDWIN QUINONES
Assistant Regional Counsel
U.S. Environmental Protection Agency, Region 6
1445 Ross Avenue, Suite 1200, 6RC-S
Dallas, Texas 75202-2733

**FOR THE LOUISIANA DEPARTMENT OF ENVIRONMENTAL QUALITY:**

Herman Robinson, General Counsel (#2077)

By

OSCAR MAGEE (#32302)
Trial Attorney
DWANA C. KING (#20590)
Deputy General Counsel
Louisiana Department of Environmental Quality
P.O. Box 4302
Baton Rouge, LA 70821-4302
Phone: (225) 219-3985
Fax: (225) 219-4068
E-mail: oscar.magee@la.gov
dwana.king@la.gov

19