## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **UNITED STATES OF AMERICA and LOUISIANA DEPARTMENT OF ENVIRONMENTAL QUALITY** ) ) ) ) ) | |
| **Plaintiffs,** ) | **Civil Action No.**  5:19-cv-107 |
| ) | |
| **v.** ) | **Judge** |
| ) | |
| **SUNOCO PIPELINE L.P. and MID-VALLEY PIPELINE COMPANY** ) ) ) | |
| ) | |
| **Defendants.** ) | |

## <u>CONSENT DECREE</u>

| I. | JURISDICTION AND VENUE | 3 |
| II. | APPLICABILITY | 4 |
| III. | DEFINITIONS | 5 |
| IV. | CIVIL PENALTIES; STATE RESPONSE COSTS | 9 |
| V. | INJUNCTIVE RELIEF | 12 |
| VI. | STIPULATED PENALTIES | 17 |
| VII. | FORCE MAJEURE | 21 |
| VIII. | DISPUTE RESOLUTION | 23 |
| IX. | INFORMATION COLLECTION AND RETENTION | 26 |
| X. | EFFECT OF SETTLEMENT/RESERVATION OF RIGHTS | 28 |
| XI. | COSTS | 30 |
| XII. | NOTICES | 30 |
| XIII. | EFFECTIVE DATE | 33 |
| XIV. | RETENTION OF JURISDICTION | 33 |
| XV. | MODIFICATION | 33 |
| XVI. | TERMINATION | 34 |
| XVII. | PUBLIC PARTICIPATION | 35 |
| XVIII. | SIGNATORIES/SERVICE | 36 |
| XIX. | INTEGRATION | 36 |
| XX. | FINAL JUDGMENT | 37 |

Plaintiffs the United States of America, on behalf of the Environmental Protection Agency ("EPA"), and the Louisiana Department of Environmental Quality ("LDEQ") have jointly filed a Complaint in this action, concurrent with the lodging of this Consent Decree, alleging that Sunoco Pipeline L.P. ("Sunoco") and the Mid-Valley Pipeline Company ("Mid-Valley") (collectively, "Defendants") violated provisions of the Clean Water Act ("CWA") and Louisiana statutes and regulations. In particular, the Complaint seeks volume-based penalties, State response costs, and injunctive relief, alleging claims arising under the following:

      A.      Section 301(a) of the CWA, 33 U.S.C. § 1311(a);

      B.      Section 311(b) of the CWA, 33 U.S.C. § 1321(b);

      C.      Section 309(b) of the CWA, 33 U.S.C. § 1319(b);

      D.      La. R.S. 30:2076(A)(1) and (A)(3);

      E.      LAC 33:IX.501.A;

      F.      LAC 33:IX.1701.B;

      G.      LAC 33:I.3925.A.3; and

      H.      Defendants' Louisiana Pollutant Discharge Elimination System General Permit.

Defendants do not admit any fact, law, or liability arising out of the Releases (as defined in Section III), occurrences or violations alleged in the Complaint.

The allegations in the Complaint relate to three separate discharges of crude oil. The Complaint alleges that on February 23, 2013, approximately 550 barrels of crude oil spilled from the eight-inch Colmesneil-to-Chester Pipeline (the "Colmesneil Line") in Tyler County, Texas (the "Texas Spill"); on October 13, 2014, approximately 4,500 barrels of crude oil spilled from the Longview, Texas, to Mayersville, Mississippi, portion of the Mid-Valley Pipeline (the

"Longview to Mayersville Segment") in Caddo Parish, Louisiana (the "Louisiana Spill"); and on January 20, 2015, approximately 40 barrels of crude oil spilled from the four-inch gathering line (the "Wakita Gathering Line"), in Wakita, Oklahoma (the "Oklahoma Spill"). The Colmesneil Line, the Mid-Valley-owned Longview to Mayersville Segment, and the Wakita Gathering Line were all operated by Sunoco when the respective spills occurred, and the Longview to Mayersville Segment is currently operated by Sunoco.

Sunoco represents that it has abandoned the Colmesneil Line and the Wakita Gathering Line, consistent with the definition of "abandoned" found at 49 C.F.R. § 195.2, and as used in 49 C.F.R. Section 195.402(c)(10). As such, all crude oil has been removed from the lines, and the lines are currently inactive. Sunoco reserves the right to restart the Colmesneil Line and the Wakita Gathering Line, subject to the requirements of Section V (Injunctive Relief).

Sunoco also represents that, prior to lodging of this Consent Decree, Sunoco has taken the following actions on the Mid-Valley Pipeline in an effort to detect threats to the integrity of its pipelines and prevent future unauthorized discharges of crude oil from its pipeline facilities:

- Pipeline inspections using in-line inspection ("ILI") technology;

- Performance of "data integration," which entails considering ILI data, along with other information about Sunoco's pipeline assets, to identify necessary facility repairs that present oil spill risks;

- Beginning in 2015, commencement of a multiyear program to Hydrotest the entire length of the Mid-Valley Line, which, as of the date of lodging, is approximately 75% complete;

- Installation of a software-based pipeline integrity monitoring using "LeakWarn" at the Sunoco Houston, Texas, control room (provides continuous, real-time data about the crude oil flow in system pipelines); and

- Third-party assessment of Sunoco's current Houston, Texas, control-room leak-detection procedures.

The Parties recognize, and the Court by entering this Consent Decree finds, that this

Consent Decree has been negotiated by the Parties in good faith and will avoid continued litigation between the Parties on the claims addressed in the Complaint, and that this Consent Decree is fair, adequate, reasonable, and in the public interest.

NOW, THEREFORE, before the taking of any testimony, without the adjudication or admission of any issue of fact or law except as provided in Section I (Jurisdiction and Venue), with the consent of the Parties, IT IS HEREBY ADJUDGED, ORDERED, AND DECREED as follows:

## I.    JURISDICTION AND VENUE

1.      This Court has jurisdiction over the subject matter of this action, pursuant to 28 U.S.C. §§ 1331, 1345, and 1355, and Section 311(b)(7)(E) and (n) of the CWA, 33 U.S.C. § 1321(b)(7)(E) and (n), and over the Parties. This Court has supplemental jurisdiction over the State law claims asserted by LDEQ pursuant to 28 U.S.C. § 1367.

2.       Venue lies in this judicial district pursuant to Section 311(b)(7)(E) of the CWA, 33 U.S.C. § 1321(b)(7)(E), and 28 U.S.C. §§ 1391 and 1395(a), because the claims arose, and Defendants are doing business, in this district.

3.      For purposes of this Decree, or any action to enforce this Decree, Defendants consent to the Court's jurisdiction over this Decree, any such action, and over Defendants, and further consent to venue in this judicial district.

4.      For purposes of this Consent Decree, Defendants agree that the Complaint states claims upon which relief may be granted pursuant to Sections 301, 309(b), and 311(b) of the CWA, 33 U.S.C. §§ 1311, 1319(b), 1321(b).

## II. APPLICABILITY

5. The obligations of this Consent Decree apply to and are binding upon the United States, LDEQ, and to and upon Defendants, jointly and severally, and any successors, assigns, or other entities or persons otherwise bound by law.

6. No transfer of ownership or operation of any of the Covered Facilities, whether in compliance with the procedures of this Paragraph or otherwise, shall relieve Defendants of their obligations to ensure that the terms of the Decree are implemented, unless: (1) the transferee agrees to undertake the obligations required by this Consent Decree and to be substituted for one or both of the Defendants as a Party under the Decree and thus be bound by the terms thereof, and (2) the United States consents to relieve the one or both of the Defendants of its or their obligations. The United States' decision to refuse to approve the substitution of the transferee for a Defendant shall not be subject to judicial review. At least 30 Days prior to any transfer, the relevant Defendant (or Defendants) shall provide a copy of this Consent Decree to the proposed transferee and shall simultaneously provide written notice of the prospective transfer, together with a copy of the proposed written agreement, to EPA Region VI, the United States Attorney for the Western District of Louisiana, and the United States Department of Justice, in accordance with Section XII (Notices). Any attempt to transfer ownership or operation of any of the Covered Facilities without complying with this Paragraph constitutes a violation of this Decree.

7. Defendants shall provide a copy of this Consent Decree to all officers, employees, and agents whose duties reasonably include compliance with any provision of this Decree, as well as to any contractor retained to perform work required under this Consent Decree. Defendants may also fulfill the obligation in the preceding sentence by providing the foregoing persons with instruction and briefing concerning portions of this Consent Decree for which they

have implementation responsibilities. To the extent a third party is retained by a Defendant to perform any tasks which are the subject of this Consent Decree, such Defendant shall condition any such contract upon performance of the work in conformity with the terms of this Consent Decree.

8.     In any action to enforce this Consent Decree, neither Defendant shall raise as a defense the failure by any of its officers, directors, employees, agents, or contractors to take any action necessary to comply with the provisions of this Consent Decree.

### III.   DEFINITIONS

9.     Terms used in this Consent Decree that are defined in the Act or in regulations promulgated pursuant to the Act shall have the meanings assigned to them in the Act or such regulations, unless otherwise provided in this Decree. Whenever the terms set forth below are used in this Consent Decree, the following definitions shall apply:

a.     "60-Day Repair Condition" shall mean a pipeline condition meeting one of the criteria listed under the heading "60-Day Repair Condition" in Table 1 of Appendix C (Repair Condition Identification and Classification).

b.     "180-Day Repair Condition" shall mean a pipeline condition meeting one of the criteria listed under the heading "180-Day Repair Condition" in Table 1 of Appendix C (Repair Condition Identification and Classification).

c.     "Axial Magnetic Flux Leakage Corrosion Tool" shall mean a pipeline corrosion detection tool employing technology that provides a reliable means of detecting pipeline anomalies, including but not limited to: pipe wall thickness loss, general corrosion, or wide circumferential flaws.

d.     "Caliper Tool" shall mean a pipeline inspection tool that is capable of and

operates to measure, continuously, the inside diameter of a pipeline through sensors that are in contact with the pipe wall for the duration of the tool run, and through data collected by the sensors provides information about pipe wall thickness.

       e.     "Complaint" shall mean the complaint filed by the United States and LDEQ in this action.

       f.     "Consent Decree" or "Decree" shall mean this Decree and all appendices attached hereto (listed in Section V).

       g.     "Covered Facilities" shall mean the Longview to Mayersville Segment; the Colmesneil Line; and the Wakita Gathering Line.

       h.     "Day" shall mean a calendar day unless expressly stated to be a working day. In computing any period of time under this Consent Decree, the Parties will follow Rule 6(a) of the Federal Rules of Civil Procedure.

       i.     "Defendants" shall mean Sunoco Pipeline L.P. ("Sunoco") and Mid-Valley Pipeline Company ("Mid-Valley").

       j.     "Effective Date" shall have the definition provided in Section XIII.

       k.     "EPA" shall mean the United States Environmental Protection Agency and any of its successor departments or agencies.

       l.     "High Consequence Area" shall have the meaning set forth in 49 C.F.R. § 195.450.

       m.     "Hydrotest" shall mean a pipeline pressure test conducted according to the requirements described at 49 C.F.R. Part 195, Subpart E.

       n.     "Idle" shall mean, in connection with any of the Covered Facilities, that no crude oil has been transported through any Pipeline Segment for a period of over 120

6

Days.

       o.     "ILI Technology" shall mean a method or methods used to perform internal (in-line) pipeline inspection capable of detecting pipeline corrosion, deformation, or other anomalies occurring on the inside of a pipeline, including but not limited to: dents, gouges, or grooves.

       p.     "Immediate Repair Condition" shall mean a pipeline condition meeting one of the criteria listed under the heading "Immediate Repair Condition" in Table 1 of Appendix C (Repair Condition Identification and Classification).

       q.     "In Operation" shall mean, in connection with any of the Covered Facilities, that crude oil has been transported through a Pipeline Segment at any time during a period of 120 Days, except that in calculating this period, no Day prior to the Effective Date shall be included.

       r.     "LDEQ" shall mean the Louisiana Department of Environmental Quality and any of its successor departments or agencies.

       s.     "Louisiana" shall mean the State of Louisiana.

       t.     "Louisiana Spill" shall mean the discharge of approximately 4,500 barrels of crude oil from the Mid-Valley Pipeline in Caddo Parish, Louisiana, on October 13, 2014.

       u.     "Mid-Valley Pipeline" shall mean the Sunoco-operated pipeline from Longview, Texas to Lima, Ohio.

       v.     "Oklahoma Spill" shall mean the discharge of approximately 40 barrels of crude oil from the Wakita Gathering Line in Grant County, Oklahoma, on January 20, 2015.

w.      "Paragraph" shall mean a portion of this Decree identified by an arabic numeral.

x.      "Parties" shall mean the United States, LDEQ, and Defendants.

y.      "Pipeline Segment" shall mean continuous run of pipe between adjacent stations, between a station and a block valve, or between adjacent block valves at any Covered Facility.

z.      "PHMSA" shall mean the United States Pipeline and Hazardous Safety Administration and any of its successor departments or agencies.

aa.     "Repair Condition" shall mean any Immediate Repair Condition, 60-Day Repair Condition, or 180-Day Repair Condition.

bb.     "Releases" shall mean the Louisiana Spill, the Oklahoma Spill, and the Texas Spill.

cc.      "SCADA" shall mean supervisory control and data acquisition system or an industrial control system used to obtain information about and control pipeline infrastructure operations.

dd.     "Section" shall mean a portion of this Decree identified by a roman numeral.

ee.     "Texas Spill" shall mean the discharge of approximately 550 barrels of crude oil from the Colmesneil Line in Tyler County, Texas, on February 23, 2013.

ff.      "United States" shall mean the United States of America, acting on behalf of EPA.

gg.     "Ultrasonic Crack Detection Tools" shall mean pipeline crack detection and inspection tools that use ultrasound to provide reliable means of detecting cracks

8

and crack-like anomalies in pipelines.

### IV.    CIVIL PENALTIES; STATE RESPONSE COSTS

10.    Neither Defendant may deduct or capitalize the civil penalties paid under this Section in calculating federal income tax or any state income tax.

<u>Penalty to be paid to the United States:</u>

11.    Within 30 Days after the Effective Date, Sunoco shall pay to the United States $287,000 in civil penalties for the Texas and Oklahoma Spills. If this payment is not made within 30 Days of the Effective Date, then Sunoco will also pay to the United States an additional sum for interest, at the rate specified in 28 U.S.C. § 1961 as of the date of lodging, calculated as of the date of lodging and accruing through the date that payment is made. This amount for interest is to be paid in addition to any amount due for late payment pursuant to Section VI (Stipulated Penalties).

12.     Within 30 Days after the Effective Date, Sunoco shall pay to the United States $4,713,000 as a civil penalty for the Louisiana Spill. If this payment is not made within 30 Days of the Effective Date, Sunoco will also pay to the United States an additional sum for interest, at the rate specified in 28 U.S.C. § 1961 as of the date of lodging, calculated as of the date of lodging and accruing through the date that payment is made. This amount for interest is to be paid in addition to any amount due for late payment pursuant to Section VI (Stipulated Penalties). Defendants' obligations to pay the federal civil penalty pursuant to this Paragraph are

joint and several. In the event of Sunoco's insolvency or its failure to pay that civil penalty, Mid-Valley shall make such payment.

13.     Sunoco shall pay the civil penalty due by FedWire Electronic Funds Transfer ("EFT") to the U.S. Department of Justice in accordance with written instructions to be provided to:

> Jim Wright
> General Counsel
> Energy Transfer Partners
> 1300 Main Street
> Houston, TX  77002-6803
> E-mail: Jim.Wright@energytransfer.com

With a copy to:

> Kevin Dunleavy, Assistant General Counsel
> 2 Righter Parkway, Suite 200
> Wilmington, DE 19803
> kdunleavy@evergreenresmgt.com

following lodging of the Consent Decree, by the Financial Litigation Unit of the U.S. Attorney's Office for the Western District of Louisiana. Sunoco may change the individual to receive payment instructions on its behalf by providing written notice of such change to the United States in accordance with Section XI (Costs). Such monies are to be deposited in the Oil Spill Liability Trust Fund. The payment shall reference the Civil Action Number assigned to this case and DOJ Number 90-5-1-1-11673 and shall specify that the payment is made toward CWA civil penalties to be deposited into the Oil Spill Liability Trust Fund pursuant to 33 U.S.C. § 1321(s) and 26 U.S.C. § 9509(b)(8).

14.     At the time of payment, Sunoco shall send a copy of the EFT authorization form and the EFT transaction record, together with a transmittal letter, which shall state that the payment is for the civil penalty owed pursuant to the Consent Decree in this case and shall

reference the Civil Action Number assigned to this case and DOJ Number 90-5-1-1-11673, to the

United States in accordance with Section XII of this Decree (Notices) and to EPA via email at

acctsreceivable.cinwd@epa.gov or via regular mail at EPA Cincinnati Finance Office, 26 Martin

Luther King Drive, Cincinnati, Ohio 45268.

<u>Penalties and costs to be paid to LDEQ:</u>

15.     Within 30 Days of the Effective Date, Sunoco shall pay to LDEQ $436,274.20 as

a civil penalty and enforcement costs. In the event any payment required by this Section is not

made when due, Sunoco shall pay interest on the balance at the rate specified in 28 U.S.C.

§ 1961 as of the Effective Date. The interest shall begin to accrue from the Effective Date

through the date of full payment. Interest payments shall be paid in the same manner as the

overdue principal amount, and shall be directed to the same fund or account as the overdue

principal amount. Interest is in addition to any stipulated penalties accruing for late payments

under Section VI (Stipulated Penalties). Payments of interest made under this Paragraph shall be

in addition to such other remedies or sanctions available to Plaintiffs by virtue of Sunoco's

failure to make timely payments under this Section including, but not limited to, payment of

stipulated penalties pursuant to Section VI. Defendants' obligations to pay the civil penalty and

enforcement costs pursuant to this Paragraph are joint and several. In the event of Sunoco's

insolvency or the failure by Sunoco to make payment under this Paragraph, Mid-Valley shall

make such payment.

16.     Payment shall be made by check or EFT in accordance with instructions to be

provided by LDEQ to:

> Jim Wright
> General Counsel
> Energy Transfer Partners
> 1300 Main Street
> Houston, TX  77002-6803
> E-mail: Jim.Wright@energytransfer.com

With a copy to:

> Kevin Dunleavy, Assistant General Counsel
> 2 Righter Parkway, Suite 200
> Wilmington, DE 19803
> kdunleavy@evergreenresmgt.com

Sunoco may change the individual to receive payment instructions on their behalf by providing written notice of such change to LDEQ in accordance with Section XI (Costs). If paying by check, the check shall be made payable to the Louisiana Department of Environmental Quality, referencing this Civil Action, and mailed to: Fiscal Director, LDEQ, Office of Management and Finance, P.O. Box 4303, Baton Rouge, LA 70821-4303.

## V.   INJUNCTIVE RELIEF

17.   Pipeline Inspections. During the three-year period immediately following the Effective Date, Sunoco shall use all three of the following types of ILI Technology—with each tool used at least once—to inspect the entire length of any Covered Facility that is In Operation at any point during the three-year period:

a.   A Caliper Tool;

b.   An Axial Magnetic Flux Leakage Corrosion Tool; and

c.   An Ultrasonic Crack Detection Tool.

18.   ILI Technology Selection. Sunoco shall select the specific model of each type of ILI Technology required by Paragraph 17 in accordance with the procedure set forth in Appendix A (ILI Technology Selection).

19.      ILI Technology Substitution. Sunoco may use a substitute tool, rather than one of the tools identified in Paragraph 17.a–c, if the following conditions are satisfied:

a.      The substitute tool is as effective at detecting pipeline cracks and/or corrosion as one of the tools listed in Paragraph 17.a–c;

b.      The substitute tool is readily available at the time of the scheduled inspection; and

c.      In the next-due Semi-Annual Report, Sunoco describes the substitute tool, and explains why the substitute tool was used and how the conditions set forth in Paragraph 19.a–b were satisfied.

20.      Data Integration. Following the performance of pipeline inspections pursuant to Paragraph 17 or 19, as applicable, Sunoco shall consider information from the sources identified, and in accordance with the procedures set forth, in Appendix B (Data Integration).

21.      Identification and Remediation of Repair Conditions. Following the performance of the obligations set forth in Paragraph 20, Sunoco shall identify all Immediate Repair Conditions, 60-Day Repair Conditions, and 180-Day Repair Conditions discovered during the inspections conducted pursuant to Paragraph 17 or 19, as applicable, and address all identified repair conditions as follows:

a.      Immediate Repair Condition Repair. Sunoco shall repair any Immediate Repair Condition as soon as possible and in no event later than 30 Days after identification pursuant to this Paragraph. Sunoco shall also reduce the operating pressure or shut down the Pipeline Segment until the operator completes the repair of the Immediate Repair Condition. Sunoco shall calculate the temporary reduction in operating pressure using the formulas set forth at 49 C.F.R. § 195.452(h)(4)(i)(B), and

13

reduce operating pressure by a minimum of 20 percent (based on actual operating

pressure for two months prior to the identification of the Immediate Repair Condition)

until the Immediate Repair Condition is no longer present.

   b.    60-Day Repair Condition Repair. Sunoco shall repair any 60-Day Repair

Condition by no later than 60 Days following identification pursuant to this Paragraph.

If Sunoco is unable to repair any 60-Day Repair Condition within 60 Days following

identification, Sunoco shall reduce operating pressure on the affected line, in the manner

required by 49 C.F.R. § 195.452(h)(1) & (3).

   c.    180-Day Repair Condition Repair. Sunoco shall repair any 180-Day

Repair Condition by no later than 180 Days following identification pursuant to this

Paragraph. If Sunoco is unable to repair any 180-Day Repair Condition within 180

Days, Sunoco shall reduce operating pressure on the affected line, in the manner

required by 49 C.F.R. § 195.452(h)(1) & (3).

22.    Failure Risk Assessment. Sunoco shall assess the risk of future oil spills relating

to any Repair Condition identified by the inspection performed pursuant to Paragraph 17 or 19,

as applicable, by determining, in a manner consistent with the Stress Corrosion Cracking Study

TTO Number 8, submitted by Michael Baker in January 2005 (Appendix D), the predicted

remaining life and failure pressure of the Pipeline Segment(s) affected by the Repair Condition.

23.    Idle Pipeline Segment Risk Mitigation. Within 180 Days after the Effective Date,

and semi-annually thereafter, Sunoco shall determine whether any Pipeline Segments of any

Covered Facility In Operation are Idle.

24.    For any Pipeline Segment that is part of any Covered Facility that Sunoco

identifies as Idle, Sunoco shall ensure that the Pipeline Segment is purged of crude oil; or

14

      a.      At least once during the three-year period immediately following the Effective Date, inject a corrosion prevention treatment;

      b.      Continuously monitor for leaks or ruptures using SCADA or other leak detection system(s); and

      c.      Identify and describe in each Semi-Annual Report the leak detection system(s) employed to monitor each Idle Pipeline Segment and an explanation of why the leak detection system(s) employed is or are effective for monitoring the Idle Pipeline Segment.

25.     <u>Hydrotesting.</u> Sunoco will not return the Colmesneil Line to service without first conducting a Hydrotest on the Colmesneil Line.

26.     <u>Reporting Requirements.</u> Sunoco shall submit Semi-Annual Reports to the United States and LDEQ, in accordance with Section XII (Notices), summarizing its progress in implementing the requirements of this Section ("Semi-Annual Reports"). Each Semi-Annual Report must include enough detail that the United States, after consultation with LDEQ, can evaluate whether Sunoco is in compliance with this Section of the Consent Decree. The Semi-Annual Reports shall be submitted per the following schedule:

      a.      First Semi-Annual Report: due within 30 Days of the date that is six months after the Effective Date;

      b.      Second Semi-Annual Report: due within 30 Days of the date that is 12 months after the Effective Date;

      c.      Third Semi-Annual Report: due within 30 Days of the date that is 18 months after the Effective Date;

      d.      Fourth Semi-Annual Report: due within 30 Days of the date that is 24 months after the Effective Date;

      e.      Fifth Semi-Annual Report: due within 30 Days of the date that is 30 months after the Effective Date;

f.      Sixth Semi-Annual Report: due within 30 Days of the date that is 36 months after the Effective Date.

27.      Each report, letter report, or certification submitted by Sunoco under this Section shall be signed by an official of the submitting party and include the following certification:

I certify under penalty of law that this document and all attachments were prepared under my direction or supervision in accordance with a system designed to assure that qualified personnel properly gather and evaluate the information submitted. Based on my inquiry of the person or persons who manage the system, or those persons directly responsible for gathering the information, the information submitted is, to the best of my knowledge and belief, true, accurate, and complete. I am aware that there are significant penalties for submitting false information, including the possibility of fine and imprisonment for knowing violations.

This certification requirement does not apply to emergency or similar notifications where compliance would be impractical.

28.      The requirements of this Consent Decree do not relieve Defendants of any obligation required by the Clean Water Act or implementing regulations, or by any other federal, state, or local law, regulation, permit, or other requirement.

29.      Any information provided pursuant to this Consent Decree may be used by the United States or LDEQ in any proceeding to enforce the provisions of this Consent Decree and as otherwise permitted by law.

30.      If EPA in its sole discretion, after consultation with LDEQ, determines that Sunoco has failed materially to perform any obligation(s) required pursuant to this Section with respect to the Longview to Mayersville Segment, EPA will provide notice by email to Defendants at the email address provided in Section XII (Notices). Effective immediately upon the date and time the email notice is sent, Mid-Valley will become fully responsible for performance of the obligation(s), including payment of any stipulated penalties for non-performance specified in the notice, in accordance with the requirements and schedules set forth herein.

16

## VI.    STIPULATED PENALTIES

31.       Defendants shall be liable for stipulated penalties as specified below, unless excused under Section VII (Force Majeure).

32.       <u>Late Payment of Civil Penalties</u>.

a.       If Sunoco fails to pay the federal civil penalties and interest to the United States as required under Paragraphs 11 or 12 when due, Sunoco shall be liable to the United States for stipulated penalties of $2,500 per Day for each Day the payment is late. Sunoco shall pay to the United States the full amount of any stipulated penalties due pursuant to this subparagraph within thirty Days of receiving a written demand. Defendants' obligations to pay stipulated penalties in connection with the requirements set forth in Paragraph 12 are joint and several. In the event of Sunoco's insolvency or the failure by Sunoco to pay such stipulated penalties, Mid-Valley shall make any payment due, along with any interest due pursuant to Paragraph 41.

b.       If Sunoco fails to pay the amount for state civil penalty and enforcement costs to LDEQ as required under Paragraph 15 when due, Sunoco shall be liable to LDEQ for stipulated penalties of $2,500 per Day for each Day the payment is late. Sunoco shall pay to LDEQ the full amount of any stipulated penalties due pursuant to this subparagraph within thirty Days of receiving a written demand. Defendants' obligations to pay stipulated penalties in connection with the requirements set forth in Paragraph 15 are joint and several. In the event of Sunoco's insolvency or the failure by Sunoco to pay such stipulated penalties, Mid-Valley shall make any payment due, along with any interest due pursuant to Paragraph 41.

33.　　　Stipulated Penalties for Non-Performance of Injunctive Relief.

　　　a.　　For failure to perform any obligation required pursuant to Paragraphs 17-25 of Section V (Injunctive Relief), including failure to perform within or by a specified time schedule, Sunoco shall pay stipulated penalties as follows:

| Penalty Per Violation | Per Day Period of Noncompliance |
|---|---|
| $750 penalty per Day | 1st to 30th Day |
| $2,000 penalty per Day | 31st to 60th Day |
| $3,000 penalty per Day | 61st Day and beyond |

　　　b.　　For failure to perform any obligation required pursuant to Paragraphs 26-27 of Section V (Injunctive Relief), including failure to perform by a specified deadline, Sunoco shall pay stipulated penalties as follows:

| Penalty Per Violation | Per Day Period of Noncompliance |
|---|---|
| $350 penalty per Day | 1st to 14th Day |
| $750 penalty per Day | 15th to 30th Day |
| $1,250 penalty per Day | 31st Day and beyond |

　　　c.　　Sunoco shall pay stipulated penalties due pursuant to this Paragraph within thirty Days of a written demand.

　　　d.　　Except for stipulated penalties for obligations that Sunoco is required to perform on the Longview to Mayersville Segment pursuant to Paragraphs 17-24, only the United States may issue a written demand for stipulated penalties relating to the injunctive relief provisions of Section V (Injunctive Relief), and Sunoco must pay to the United States the full amount of any stipulated penalties due and will not be liable to LDEQ for any such penalties.

　　　e.　　For stipulated penalties for obligations that Sunoco is required to perform on the Longview to Mayersville Segment pursuant to Paragraphs 17-24, the United

18

States, or LDEQ, or both, may demand stipulated penalties by sending a joint written

demand to Defendants, or by either the United States or LDEQ sending a written demand

to Defendants, with a copy simultaneously sent to the other Plaintiff.

      f.    Where both Plaintiffs demand stipulated penalties for the same violation,

Sunoco shall pay 50 percent to the United States and 50 percent to LDEQ. Where only

one Plaintiff demands stipulated penalties, and the other Plaintiff does not join in the

demand within 15 Days of receiving the demand, or joins in the demand within 15 Days

but subsequently elects to waive or reduce stipulated penalties, in accordance with

Paragraph 38 or 39, for that violation Sunoco shall pay the full stipulated penalties due

for the violation to the Plaintiff making the demand less any amount paid to the other

Plaintiff.

34.    For all payments made pursuant to this Section, Sunoco must follow the payment

instructions set forth in Section IV. Any transmittal correspondence shall identify the date of the

written demand to which the payment corresponds.

35.    For all payments of stipulated penalties due to the United States, Sunoco shall

reference the Civil Action Number assigned to this case and DOJ Number 90-5-1-1-11673, and

shall specify that payments are for stipulated penalties to be deposited into the United States

Treasury.

36.    For all payments of stipulated penalties due to LDEQ, Sunoco shall reference the

Civil Action Number and submit payment as specified in Paragraph 16. All stipulated penalties

paid to LDEQ shall be deposited in the Hazardous Waste Site Cleanup Fund.

37.      Stipulated penalties under this Section shall begin to accrue on the Day after the performance is due and shall continue to accrue until performance is satisfactorily completed. Stipulated penalties shall accrue simultaneously for separate violations of this Consent Decree.

38.      The United States may in the unreviewable exercise of its discretion, reduce or waive stipulated penalties otherwise due to the United States under this Consent Decree.

39.      LDEQ may, in the unreviewable exercise of its discretion, reduce or waive stipulated penalties otherwise due to LDEQ under this Consent Decree.

40.      Stipulated penalties shall continue to accrue as provided in Paragraph 37 during any Dispute Resolution, but need not be paid until the following:

a.      If the dispute is resolved by agreement or by a decision of the United States that is not appealed to the Court, Sunoco shall pay accrued penalties determined to be owing, together with interest, to the United States within 30 Days of the effective date of the agreement or the receipt of EPA's or LDEQ's decision or order.

b.      If the dispute is appealed to the Court and the United States prevails in whole or in part, Sunoco shall pay all accrued penalties determined by the Court to be owing, together with interest, within 60 Days of receiving the Court's decision or order, except as provided in subparagraph c, below.

c.      If any Party appeals the District Court's decision, Sunoco shall pay all accrued penalties determined to be owing, together with interest, within 15 Days of receiving the final appellate court decision.

41.      If Sunoco fails to pay stipulated penalties according to the terms of this Consent Decree, Sunoco shall be liable for interest on such penalties, as provided for in 28 U.S.C. § 1961, accruing as of the date payment became due. Nothing in this Paragraph shall be construed to

limit the United States or LDEQ from seeking any remedy otherwise provided by law for Sunoco's failure to pay any stipulated penalties.

42.       The payment of stipulated penalties and interest, if any, shall not alter in any way Sunoco's obligation to complete the performance of the requirements of this Consent Decree.

43.       Subject to the provisions of Section X of this Consent Decree (Effect of Settlement/Reservations of Rights), the stipulated penalties provided for in this Consent Decree shall be in addition to any other rights, remedies, or sanctions available to the United States or LDEQ for Defendants' violation of this Consent Decree or applicable law.

## VII.    FORCE MAJEURE

44.       "Force Majeure," for purposes of this Consent Decree, is defined as any event arising from causes beyond Defendants' control, of any entity controlled by either Defendant, or of Defendants' contractors that delays or prevents the performance of any obligation under this Consent Decree despite Defendants' best efforts to fulfill the obligation. The requirement that Defendants exercise "best efforts to fulfill the obligation" includes using best efforts to anticipate any potential Force Majeure event and best efforts to address the effects of any potential Force Majeure event (a) as it is occurring and (b) following the potential Force Majeure, such that the delay and any adverse effect(s) of the delay are minimized. "Force Majeure" does not include Defendants' financial inability to perform any obligation under this Consent Decree.

45.       If any event occurs or has occurred that may delay the performance of any obligation under this Consent Decree, whether or not caused by a Force Majeure event, Defendants shall provide notice orally and by electronic and facsimile transmission to EPA and LDEQ within 72 hours of when Defendants first knew that the event might cause a delay. Within seven Days thereafter, Defendants shall provide in writing to EPA and LDEQ an explanation and

description of the reason(s) for the delay; the anticipated duration of the delay; all actions taken or to be taken to prevent or minimize the delay; a schedule for implementation of all measures to be taken to prevent or mitigate the delay or the effect of the delay; Defendants' rationale for attributing such delay to a Force Majeure event if it intends to assert such a claim; and a statement as to whether, in the opinion of Defendants, such event may cause or contribute to an endangerment to public health, welfare or the environment. Defendants shall include with any notice all available documentation supporting the claim that the delay was attributable to a Force Majeure. Failure to comply with the above requirements shall preclude Defendants from asserting any claim of Force Majeure for that event for the period of time of such failure to comply, and for any additional delay caused by such failure. Defendants shall be deemed to know of any circumstance of which Defendants, any entity controlled by Defendants, or their contractors knew or should have known.

46.     If the United States, after a reasonable opportunity for review and comment by LDEQ, agrees that the delay or anticipated delay is attributable to a Force Majeure event, the time for performance of the obligations under this Consent Decree that are affected by the Force Majeure event will be extended by the United States, after a reasonable opportunity for review and comment by LDEQ, for such time as is necessary to complete those obligations. An extension of the time for performance of the obligations affected by the Force Majeure event shall not, of itself, extend the time for performance of any other obligation. The United States will notify Defendants in writing of the length of the extension, if any, for performance of the obligations affected by the Force Majeure event.

47.     If the United States, after a reasonable opportunity for review and comment by LDEQ, does not agree that the delay or anticipated delay has been or will be caused by a Force Majeure event, the United States will notify Defendants in writing of its decision.

48.     If Defendants elect to invoke the dispute resolution procedures set forth in Section VIII (Dispute Resolution), they shall do so no later than 15 Days after receipt of the United States' notice. In any such proceeding, Defendants shall have the burden of demonstrating by a preponderance of the evidence that the delay or anticipated delay has been or will be caused by a Force Majeure event, that the duration of the delay or the extension sought was or will be warranted under the circumstances, that best efforts were exercised to avoid and mitigate the effects of the delay, and that Defendants complied with the requirements of Paragraphs 44 and 45. If Defendants carries this burden, the delay at issue shall be deemed not to be a violation by Defendants of the affected obligation of this Consent Decree identified to the United States and the Court.

## VIII.   DISPUTE RESOLUTION

49.     Unless otherwise expressly provided for in this Consent Decree, the dispute resolution procedures of this Section shall be the exclusive mechanism to resolve disputes arising under or with respect to this Consent Decree. Defendants' failure to seek resolution of a dispute under this Section shall preclude Defendants from raising any such issue as a defense to an action by the United States or LDEQ to enforce any obligation of Defendants arising under this Decree.

50.     Informal Dispute Resolution. Any dispute subject to Dispute Resolution under this Consent Decree shall first be the subject of informal negotiations. The dispute shall be considered to have arisen when Defendants send the United States a written Notice of Dispute.

Such Notice of Dispute shall state clearly the matter in dispute. The period of informal negotiations shall not exceed 20 Days from the date the dispute arises, unless that period is modified by written agreement of all of the Parties to the dispute. If the Parties cannot resolve a dispute by informal negotiations, then the position advanced by the United States shall be considered binding unless, within 20 Days after the conclusion of the informal negotiation period, Defendants invoke formal dispute resolution procedures as set forth below.

51.     <u>Formal Dispute Resolution.</u> Defendants shall invoke formal dispute resolution procedures, within the time period provided in the preceding Paragraph, by serving on the United States a written Statement of Position regarding the matter in dispute. The Statement of Position shall include, but need not be limited to, any factual data, analysis, or opinion supporting Defendants' position and any supporting documentation relied upon by Defendants.

52.     The United States shall serve its Statement of Position within 45 Days of receipt of Defendants' Statement of Position. The United States' Statement of Position shall include, but need not be limited to, any factual data, analysis, or opinion supporting that position and any supporting documentation relied upon by the United States. The United States' Statement of Position shall be binding on Defendants, unless Defendants file a motion for judicial review of the dispute in accordance with the following Paragraph.

53.     Defendants may seek judicial review of the dispute by filing with the Court and serving on the United States, in accordance with Section XII (Notices), a motion requesting judicial resolution of the dispute. The motion must be filed within ten Days of receipt of the United States' Statement of Position pursuant to the preceding Paragraph. The motion shall contain a written statement of Defendants' position on the matter in dispute, including any supporting factual data, analysis, opinion, or documentation, and shall set forth the relief

requested and any schedule within which the dispute must be resolved for orderly implementation of the Consent Decree.

54.     The United States shall respond to Defendants' motion within the time period allowed by the Local Rules of this Court. Defendants may file a reply memorandum, to the extent permitted by the Local Rules.

55.     <u>Standard of Review.</u>

a.     <u>Disputes Concerning Matters Accorded Record Review</u>.  Except as otherwise provided in this Consent Decree, in any dispute brought under Paragraph 50 pertaining to the adequacy or appropriateness of plans or procedures to implement plans; the adequacy of the performance of work undertaken pursuant to this Consent Decree; and all other disputes that are accorded review on the administrative record under applicable principles of administrative law, Defendants shall have the burden of demonstrating, based on the administrative record, that the position of the United States is arbitrary and capricious or otherwise not in accordance with law.

b.     <u>Other Disputes.</u> Except as otherwise provided in this Consent Decree, in any other dispute brought under Paragraph 50, Defendants shall bear the burden of demonstrating that their position complies with this Consent Decree and better furthers the objectives of the Consent Decree.

56.     The invocation of dispute resolution procedures under this Section shall not, by itself, extend, postpone, or affect in any way any obligation of Defendants under this Consent Decree, unless and until final resolution of the dispute so provides. Stipulated penalties with respect to the disputed matter shall continue to accrue from the first Day of noncompliance, but payment shall be stayed pending resolution of the dispute as provided in Paragraph 40. If

Defendants do not prevail on the disputed issue, stipulated penalties shall be assessed and paid as provided in Section VI (Stipulated Penalties).

## IX.    INFORMATION COLLECTION AND RETENTION

57.    The United States and its representatives, including attorneys, contractors, and consultants, shall have the right of entry or to inspect the Covered Facilities, at all reasonable times, upon presentation of credentials, to:

a.    Monitor the progress of activities required under Section V (Injunctive Relief) this Consent Decree;

b.    Verify any data or information submitted to the United States in accordance with the terms of this Consent Decree;

c.    Obtain samples and, upon request, splits of any samples taken by Defendants or their representatives, contractors, or consultants;

d.    Obtain documentary evidence, including photographs and similar data; and

e.    Assess Defendants' compliance with this Consent Decree.

58.    Upon a request by Plaintiffs, Defendants shall provide splits of any samples taken by Defendants or their representatives, contractors, or consultants;

59.    Until three years after the termination of this Consent Decree, Defendants shall retain, and shall instruct their contractors and agents to preserve, all pipeline inspection data collected during the inspections performed pursuant to Paragraph 17 or 19 that are in their or their contractors' or agents' possession or control, or that come into their or their contractors' or agents' possession or control. Until one year after the termination of this Consent Decree, Defendants shall retain, and shall instruct their contractors and agents to preserve, all non-

identical copies of all documents and electronically stored information in their or their contractors' or agents' possession or control, or that come into their or their contractors' or agents' possession or control, and are created or generated as a result of Defendants' performance of their obligations under this Consent Decree. This information-retention requirement shall apply regardless of any contrary corporate or institutional policies or procedures. At any time during this information-retention period, upon request by the United States, Defendants shall provide, within 60 Days of such request, copies of documents and electronically stored information required to be maintained under this Paragraph.

60.     At the conclusion of the information-retention period provided in the preceding Paragraph, Defendants shall notify the United States at least 90 Days prior to the destruction of any documents or electronically stored information subject to the requirements of the preceding Paragraph and, upon request by the United States, Defendants shall deliver any such documents or electronically stored information to EPA within 60 Days of such request. Defendants may assert that certain documents or electronically stored information is privileged under the attorney-client privilege or any other privilege or legal doctrine recognized by federal law. If Defendants asserts such a privilege or protection, it shall provide the following:  (a) the title of the document, record, or information; (b) the date of the document, record, or information; (c) the name and title of each author of the document, record, or information; (d) the name and title of each addressee and recipient; (e) a description of the subject of the document, record, or information; and (f) the privilege or protection asserted by Defendants. However, no documents or electronically stored information created or generated pursuant to the requirements of this Consent Decree shall be withheld on grounds of privilege.

61.      Defendants may also assert that information required to be provided under this Section is protected as Confidential Business Information ("CBI") under 40 C.F.R. Part 2. As to any information that Defendants seeks to protect as CBI, Defendants shall follow the procedures set forth in 40 C.F.R. Part 2. To assert that records, data or other information required to be submitted to LDEQ is entitled to be protected as confidential, Defendants shall follow the law and procedures as set forth in the applicable provisions of La. R.S. 30:2030; La. R.S. 30:2074.D; and LAC 33:I. Chapter 5.

62.      This Consent Decree in no way limits or affects any right of entry and inspection, or any right to obtain information, held by the United States pursuant to applicable federal laws, regulations, or permits, nor does it limit or affect any duty or obligation of Defendants to maintain documents, records, or other information imposed by applicable federal or state laws, regulations, or permits.

## X.      EFFECT OF SETTLEMENT/RESERVATION OF RIGHTS

63.      This Consent Decree resolves the civil claims of the United States and LDEQ for the violations alleged in the Complaint filed in this action through the date of lodging.

64.      The United States and LDEQ reserve all legal and equitable remedies available to enforce the provisions of this Consent Decree.

65.      The United States and LDEQ reserve all legal and equitable claims for, including but not limited to, injunctive relief, penalties, recovery of Oil Pollution Act ("OPA") response costs and damages including natural resource damages, criminal liability, and other appropriate relief, except as expressly provided in Paragraph 63. This Consent Decree shall not be construed to limit the rights of the United States or LDEQ to obtain penalties, injunctive relief, costs, damages, or other appropriate relief under the CWA or implementing regulations, or under other

28

federal laws, regulations, or permit conditions, except as expressly provided in Paragraph 63. The United States and LDEQ further reserve all legal and equitable remedies to address any imminent and substantial endangerment to the public health or welfare or the environment arising at, or posed by, Defendants' facilities or operations, whether related to the violations addressed in this Consent Decree or otherwise.

66.     In any subsequent administrative or judicial proceeding initiated by the United States, LDEQ, or the State of Louisiana for injunctive relief, civil penalties, costs, damages, criminal liability, other appropriate relief relating to Defendants' violations, Defendants shall not assert, and may not maintain, any defense or claim based upon the principles of waiver, res judicata, collateral estoppel, issue preclusion, claim preclusion, claim-splitting, or other defenses based upon a contention that the claims raised by the United States, LDEQ, or the State of Louisiana in the subsequent proceeding were or should have been brought in the instant case, except with respect to claims that have been specifically resolved pursuant to Paragraph 63.

67.     This Consent Decree is not a permit, or a modification of any permit, under any federal, State, or local laws or regulations. Defendants are responsible for achieving and maintaining complete compliance with all applicable federal, state, and local laws, regulations, and permits; and Defendants' compliance with this Consent Decree shall be no defense to any action commenced pursuant to any such laws, regulations, or permits, except as set forth herein. The United States and LDEQ do not, by consent to the entry of this Consent Decree, warrant or aver in any manner that Defendants' compliance with any aspect of this Consent Decree will result in compliance with provisions of the CWA or with any other provision of federal, state, or local laws, regulations, or permits.

68.     This Consent Decree does not limit or affect the rights of Defendants, or of the United States, LDEQ, or the State of Louisiana against any third parties, not party to this Consent Decree, nor does it limit the rights of third parties, not party to this Consent Decree, against Defendants, except as otherwise provided by law.

69.     This Consent Decree shall not be construed to create rights in, or grant any cause of action to, any third party not party to this Consent Decree.

70.     Defendants hereby covenant not to sue and agree not to assert any claims related to the Releases or response activities in connection with the Releases against the United States, LDEQ, or the State of Louisiana pursuant to the CWA, OPA, or any other state or federal law or regulation for acts or omissions through the date of lodging of the Consent Decree. Defendants further covenant not to sue and agree not to assert any direct or indirect claim for reimbursement from the Oil Spill Liability Trust Fund or pursuant to any other provision of law.

## XI.    COSTS

71.     The Parties shall bear their own costs of this action, including attorneys' fees, except that the United States and LDEQ shall be entitled to collect the costs (including attorneys' fees) incurred in any action necessary to collect any portion of the civil penalty or any stipulated penalties due but not paid by Defendants.

## XII.   NOTICES

72.     Unless otherwise specified in this Decree, whenever notifications, submissions, or communications are required by this Consent Decree, they shall be made in writing and in an electronically searchable format and be transmitted by email as follows:

As to the United States by email:

           To the U.S. Department of Justice:

                        eescdcopy.enrd@usdoj.gov
                        Re: DJ #90-5-1-1-110673

           To the EPA Region VI:

                        quinones.edwin@epa.gov

           (for Semi-Annual Reports only)
           To PHMSA Southwest Region:

                        Mary McDaniel
                        Regional Director
                        mary.mcdaniel@dot.gov

As to LDEQ by email:

                        celena.cage@LA.gov

                        oscar.magee@LA.gov

As to Defendants by email:

                        kdunleavy@evergreenresmgt.com
                        Jim.Wright@energytransfer.com

73.      If any email is returned as undeliverable or the party becomes aware by any means that the email was not delivered, the notifying Party shall, within two Days, submit the writing to the following addresses:

As to the United States:

           As to the U.S. Department of Justice:

                        EES Case Management Unit
                        Environment and Natural Resources Division
                        U.S. Department of Justice
                        P.O. Box 7611
                        Washington, DC 20044-7611

As to EPA:

> Oil Spill & Response Team Leader
> U.S. Environmental Protection Agency, Region 6
> 1445 Ross Avenue, Suite 1200, 6SF-EO
> Dallas, TX 75202-2733
>
> Edwin Quinones
> Assistant Regional Counsel
> U.S. Environmental Protection Agency, Region 6
> 1445 Ross Avenue, Suite 1200, 6RC-S
> Dallas, TX 75202-2733

As to the United States Attorney for the Western District of Louisiana:

> U.S. Attorney's Office
> Western District of Louisiana
> 300 Fannin Street, Suite 3201
> Shreveport, LA 71101

As to LDEQ:

> Celena Cage
> Enforcement Administrator Office of Enforcement
> Compliance
> La. Department of Environmental Quality
> P.O. Box 4312
> Baton Rouge, LA  70821-4312
>
> Oscar Magee
> Attorney, Legal Division
> La. Department of Environmental Quality
> P.O. Box 4302
> Baton Rouge, LA  70821-4302

As to Defendants:

> Jim Wright
> General Counsel
> Energy Transfer Partners
> 1300 Main Street
> Houston, TX  77002-6803

74.     Any Party may, by written notice to the other Parties, change its designated notice recipient or notice address provided above.

75.     Notices submitted pursuant to this Section shall be deemed submitted upon mailing or emailing, as applicable, unless otherwise provided in this Consent Decree or by mutual agreement of the Parties in writing.

## XIII.   EFFECTIVE DATE

76.     The Effective Date of this Consent Decree shall be the date upon which this Consent Decree is entered by the Court or a motion to enter the Consent Decree is granted, whichever occurs first, as recorded on the Court's docket.

## XIV.   RETENTION OF JURISDICTION

77.     The Court shall retain jurisdiction over this case until termination of this Consent Decree, for the purpose of effectuating or enforcing compliance with the terms of this Decree.

## XV.   MODIFICATION

78.     The terms of this Consent Decree, including any attached appendices, may be modified only by a subsequent written agreement signed by all the Parties. Where the modification constitutes a material change to this Decree, it shall be effective only upon approval by the Court. Where the modification does not materially alter Defendants' obligations pursuant to this Consent Decree, it shall be effective upon the written agreement of the Parties without the

consent of the Court, provided the parties first agree in writing that the modification is, in fact, non-material. Agreed extensions of time to comply with any obligation required pursuant to Paragraph 26 or Paragraph 60 by a period of not more than 30 Days shall not constitute a material change to this Decree.

79.     Any dispute concerning modification of this Decree shall be resolved pursuant to Section VIII (Dispute Resolution), provided, however, that instead of the burden of proof provided in Paragraph 55, the Party seeking modification bears the burden of demonstrating that it is entitled to the requested modification in accordance with Federal Rule of Civil Procedure 60(b).

## XVI.   TERMINATION

80.     After Defendants have completed the requirements of this Consent Decree, including injunctive relief, and has paid the civil penalties and any accrued stipulated penalties as required by this Consent Decree, Defendants may serve upon the United States and LDEQ a Request for Termination, stating that Defendants have satisfied those requirements, together with all necessary supporting documentation.

81.     Following receipt by the United States and LDEQ of Defendants' Request for Termination, the Parties shall confer informally concerning the Request and any disagreement that the Parties may have as to whether Defendants have satisfactorily complied with the requirements for termination of this Consent Decree. If the United States after consultation with LDEQ agrees that the Decree may be terminated, the Parties shall submit, for the Court's approval, a joint stipulation terminating the Decree.

82.     If the United States after consultation with LDEQ does not agree that the Decree may be terminated, Defendants may invoke Dispute Resolution under Section VIII. However,

Defendants shall not seek Dispute Resolution of any dispute regarding termination until 90 Days after service of its Request for Termination.

## XVII.  PUBLIC PARTICIPATION

83.     This Consent Decree shall be lodged with the Court for a period of not less than 30 Days for public notice and comment in accordance with 28 C.F.R. § 50.7. The United States reserves the right to withdraw or withhold its consent if the comments regarding the Consent Decree disclose facts or considerations indicating that the Consent Decree is inappropriate, improper, or inadequate. Defendants consent to entry of this Consent Decree without further notice and agree not to withdraw from or oppose entry of this Consent Decree by the Court or to challenge any provision of the Decree, unless the United States has notified Defendants in writing that it no longer supports entry of the Decree.

84.     Further, the Parties agree and acknowledge that final approval by LDEQ and entry of this Consent Decree is subject to the requirements of La. R.S. 30:2050.7, which provides for public notice of the Consent Decree in a newspaper of general circulation and the official journal of Caddo Parish, Louisiana, an opportunity for public comment of not less than 45 Days, consideration of any comments, and concurrence by the State Attorney General. Evidence of final approval of this Consent Decree by LDEQ shall be LDEQ's execution of a Motion to Enter the Consent Decree, and LDEQ reserves the right to withdraw or withhold consent based on information provided during the public comment period. In the event public comments raise issues over the content or terms of the Consent Decree, LDEQ may withdraw from this Consent Decree and will not join in the filing of a Motion to Enter the Consent Decree.

## XVIII. SIGNATORIES/SERVICE

85.     Each undersigned representative of Defendants, LDEQ, and the Acting Assistant Attorney General for the Environment and Natural Resources Division of the Department of Justice certifies that he or she is fully authorized to enter into the terms and conditions of this Consent Decree and to execute and legally bind the Party he or she represents to this document.

86.     This Consent Decree may be signed in counterparts, and its validity shall not be challenged on that basis. Defendants agree to accept service of process by mail with respect to all matters arising under or relating to this Consent Decree and to waive the formal service requirements set forth in Rules 4 and 5 of the Federal Rules of Civil Procedure and any applicable Local Rules of this Court including, but not limited to, service of a summons.

## XIX.   INTEGRATION

87.     This Consent Decree constitutes the final, complete, and exclusive agreement and understanding among the Parties with respect to the settlement embodied in the Decree and supersedes all prior agreements and understandings, whether oral or written, concerning the settlement embodied herein. The Parties acknowledge that there are no representations, agreements, or understandings relating to the settlement other than those expressly contained in this Consent Decree. The following appendices are attached to and incorporated into this Consent Decree: "Appendix A – ILI Technology Selection," "Appendix B – Data Integration," "Appendix C – Repair Condition Identification and Classification," and "Appendix D – Failure Risk Assessment."

## XX.    FINAL JUDGMENT

88.        Upon approval and entry of this Consent Decree by the Court, this Consent

Decree shall constitute a final judgment of the Court as to the United States, LDEQ, and

Defendant.


Dated and entered this  24th  day of  May  , 2019.

UNITED STATES DISTRICT JUDGE

Signature Page to Consent Decree in *United States, et al. v. Sunoco Pipeline L.P., et al.*

**FOR PLAINTIFF THE UNITED STATES OF AMERICA:**

1/29/19
Date

JEFFREY BOSSERT CLARK
Assistant Attorney General
Environment and Natural Resources Division
U.S. Department of Justice

1/29/19
Date

R. SHEA DIAZ (D.C. Bar #1500278)
Trial Attorney
Environmental Enforcement Section
Environment and Natural Resources Division
United States Department of Justice
P.O. Box 7611
Washington, D.C. 20044-7611
Phone: (202) 514-3211
Fax: (202) 616-6584
E-mail: rebecca.diaz@usdoj.gov

DAVID C. JOSEPH
United States Attorney
Western District of Louisiana

*/s/ Katherine W. Vincent*

KATHERINE W. VINCENT (18717)
Assistant United States Attorney
U.S. Attorney's Office
Western District of Louisiana
800 Lafayette Street, Suite 2200
Lafayette, LA 70501

**Signature Page to Consent Decree in** *United States, et al. v. Sunoco Pipeline L.P., et al.,*
*subject to the public notice and comment requirements of La. R.S. 30:2050.7*

**FOR PLAINTIFF UNITED STATES OF AMERICA (continued):**

Dated:   December 6, 2018

ANNE L. IDSAL
Regional Administrator
U.S. Environmental Protection Agency, Region 6
1445 Ross Avenue
Dallas, Texas 75202-2733

Dated:   November 27, 2018

EDWIN QUINONES
Assistant Regional Counsel
U.S. Environmental Protection Agency, Region 6
1445 Ross Avenue, Suite 1200, 6RC-S
Dallas, Texas 75202-2733

**Signature Page to Consent Decree in *United States, et al. v. Sunoco Pipeline L.P., et al.*,** *subject to the public notice and comment requirements of La. R.S. 30:2050.7*

**FOR PLAINTIFF UNITED STATES OF AMERICA (continued):**

Dated: 12/11/18

SUSAN PARKER BODINE
Assistant Administrator
Office of Enforcement and Compliance Assurance
U.S. Environmental Protection Agency
Ariel Rios Building. 2201A
1200 Pennsylvania Ave., N.W.
Washington. DC 20460

Dated: 12/10/18

ROSEMARIE KELLEY
Director
Office of Civil Enforcement

Dated: 11/29/18

MARK POLLINS
Director
Water Enforcement Division

Dated: 12/11/18

KELLY BRANTNER
Water Enforcement Division

40

**Signature Page to Consent Decree in** *United States, et al. v. Sunoco Pipeline L.P., et al.,*
*subject to the public notice and comment requirements of La. R.S. 30:2050.7*

**FOR PLAINTIFF LOUISIANA DEPARTMENT OF ENVIRONMENTAL QUALITY:**

Dated: 11-13-18

_____
LOURDES ITURRALDE
Assistant Secretary
Office of Environmental Compliance
Louisiana Department of Environmental Quality
P.O. Box 4302
Baton Rouge, Louisiana 70821-4312

Dated: 11/13/2018

_____
OSCAR MAGEE, La. Bar #32302
Lead Counsel
DWANA C. KING, La. Bar #20590
Deputy General Counsel
Office of the Secretary, Legal Division
Louisiana Department of Environmental Quality
P.O. Box 4302
Baton Rouge, Louisiana 70821-4302

41

**Signature Page to Consent Decree in *United States, et al. v. Sunoco Pipeline L.P., et al.***
**FOR DEFENDANT SUNOCO PIPELINE L.P.**

12/19/18
Date

_____

Matt Ramsey, President
Sunoco Logistics Partners Operations GP LLC,
General Partner of Sunoco Pipeline L.P.

Counsel for Defendant:

Stephen E. Fitzgerald
Baker Botts L.L.P.
2001 Ross Avenue
Dallas, Texas 75201
Telephone:  214-953-6624
Email:  Stephen.Fitzgerald@BakerBotts.com

*Signature Page to Consent Decree in United States, et al. v. Sunoco Pipeline L.P., et al.*
FOR DEFENDANT MID-VALLEY PIPELINE COMPANY

12/9/18
Date

Matt Ramsey, President
Sunoco Logistics Partners Operations GP LLC,
General Partner of Sunoco Pipeline L.P.

Counsel for Defendant:

Stephen E. Fitzgerald
Baker Botts L.L.P.
2001 Ross Avenue
Dallas, Texas 75201
Telephone:  214-953-6624
Email:  Stephen.Fitzgerald@BakerBotts.com

43